IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAROL T. MACKEY and CALVIN :
MACKEY, :
 :
           Plaintiffs, :
 :  CIVIL ACTION NO.
           v. :  1:05-CV-2808-TCB-CCH
 :
INDYMAC BANK, F.S.B. and JOEL :
A. FREEDMAN, :
 :
           Defendants. :

# **O R D E R**

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the report and

recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

IT IS SO ORDERED this 6th day of August, 2007.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAROL T. MACKEY and CALVIN MACKEY, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:05-CV-2808-TCB-CCH |
| | : | |
| INDYMAC BANK, F.S.B. and JOEL A. FREEDMAN, | : | |
| | : | |
| Defendants. | : | |

## FINAL REPORT AND RECOMMENDATION

Plaintiffs initiated this action by filing a Complaint against Defendants in this Court on October 31, 2005. In the Complaint [1], Plaintiffs allege federal claims arising under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.; Regulation Z, 12 C.F.R. §§ 226.1 et seq.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiffs have also asserted a state law claim under the Georgia Fair Lending Act ("GFLA"), O.C.G.A. § 7-6A-1 et seq., and state law claims of fraud and usury. Defendant IndyMac Bank, F.S.B. ("IndyMac" or Defendant) has asserted a counterclaim against Plaintiffs for payment of the home equity line of credit ("HELOC") loan opened by Plaintiffs on or about November 22,

3

2002, including the entire balance of principal and interest, together with attorney's fees in the amount of fifteen percent of the principal and interest due.

This action is before the Court on Defendant IndyMac Bank, F.S.B.'s Motion for Summary Judgment [45] and Plaintiffs' Motion for Summary Judgment [46]. For the reasons discussed below, **IT IS RECOMMENDED** that Defendant IndyMac Bank, F.S.B.'s Motion for Summary Judgment [45] be **GRANTED** and that Plaintiffs' Motion for Summary Judgment [46] be **DENIED**. **IT IS FURTHER RECOMMENDED** that judgment be entered in favor of Defendant IndyMac on Plaintiff's TILA claims, that all other claims asserted in the Complaint be dismissed, and that IndyMac's counterclaim against Plaintiffs also be dismissed.

## I.   **BACKGROUND FACTS**

The Court draws the following facts from the parties' respective Statements of Material Facts filed in support of their motions for summary judgment, as well as their responses to the opposing party's Statement of Material Facts. In addition to their respective Statements of Material Facts, each party also includes a statement of facts in the introductory portions of their respective briefs. The Court notes that Local Rule 56.1B(1) requires parties to include all material facts in their separate Statement of Material Facts, however, not in their brief, and further provides that "[t]he court will

not consider any fact . . . set out only in the brief." LR 56.1B(1), NDGa. Accordingly, to the extent that either party includes any fact in a brief that is <u>not</u> included in the party's Statement of Material Facts (or in its response to the opposing party's Statement of Material Facts), the Court shall not consider such fact in resolving the pending motions for summary judgment.

Furthermore, if the parties have disputed a specific fact and have pointed to evidence in the record creating a genuine issue of fact, the Court has viewed all evidence and factual inferences in the light most favorable to the non-movant, as required on a motion for summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); <u>McCabe v. Sharrett</u>, 12 F.3d 1558, 1560 (11th Cir. 1994); <u>Reynolds v. Bridgestone/Firestone, Inc.</u>, 989 F.2d 465, 469 (11th Cir. 1993). Accordingly, in considering the issues presented in Defendant's Motion for Summary Judgment, the Court has viewed the following facts in the light most favorable to the Plaintiffs and in considering the issues presented in Plaintiffs' Motion for Summary Judgment, the Court has viewed all facts and inferences in the light most favorable to Defendant IndyMac.

Defendant IndyMac is a federally chartered savings association.  Defendant's Statement of Material Facts as to Which There Exists No Genuine Issue to Be Tried ("Def. SMF") at ¶ 1.  On June 29, 2002, Plaintiffs signed a contract for the purchase of a house at 2220 Fisher Trail, Atlanta, Georgia, for $262,000.  Def. SMF at ¶ 2.  Plaintiffs obtained financing for the purchase from IndyMac through a mortgage broker, Maxim Mortgage Corporation ("Maxim").  Def. SMF at ¶ 3.  The sale and loan closed on July 30, 2002.  Def. SMF at ¶ 4; Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Issue ("Pl. SMF") at ¶ 1.  IndyMac charged the Plaintiffs $10,018.40 in closing costs.  Pl. SMF at ¶ 2.  At the closing, Plaintiffs executed an Adjustable Rate Note in the original principal amount of $248,900.00 and a Security Deed in favor of IndyMac.  Def. SMF at ¶ 5; Pl. SMF at ¶ 3.  Plaintiffs also executed a Truth in Lending Disclosure Statement ("Disclosure Statement").  Def. SMF at ¶ 6.  The Disclosure Statement states:  "The dollar amount the credit will cost you is $269,274.53."  Def. SMF at ¶ 7.  By their signatures on the Disclosure Statement, Plaintiffs acknowledged receipt of a completed copy of the Disclosure.  Def. SMF at ¶ 8.

Prior to the July 2002 closing, no one made any representations to Carol Mackey about the terms of the loan that were different from the actual loan terms.  Def. SMF at ¶ 8.  Calvin Mackey is "not sure" whether the actual loan terms were

consistent with prior representations; he can not remember what the mortgage broker told him about the loan.  Def. SMF at ¶¶ 23, 24.  At the time of the July 2002 loan closing, however, both Carol Mackey and Calvin Mackey understood that the loan had an adjustable rate.  Def. SMF at ¶¶ 22, 29.

About a month after the closing of the original loan, Plaintiffs contacted IndyMac by telephone to ask a question about their interest rate.  Def. SMF at ¶ 30; Pl. SMF at ¶ 4.  Specifically, they wanted to know whether their interest rate could go up to 10.95 percent as specified in their loan documents.  Def. SMF at ¶ 31.  After an IndyMac customer service representative confirmed that the interest rate could go up to 10.95 percent, Plaintiffs asked if they could refinance their adjustable rate loan with a fixed rate loan from IndyMac.  Def. SMF at ¶ 32.  The Plaintiffs were told that they could refinance with a fixed rate and thereafter they submitted a loan application.  Def. SMF at ¶¶ 33, 34.

IndyMac approved a refinancing involving two parts:  (1) a 30-year loan in the original principal amount of $240,000, with a fixed interest rate of 5.875 percent, secured by a first-priority security deed; and (2) a home equity line of credit, with a credit limit of $23,000 and a variable interest rate, secured by a second-priority security deed.  Def. SMF at ¶ 35.  The closing of the refinancing took place on or

about November 22, 2002.  Def. SMF at ¶ 36.  IndyMac chose Fidelity National Title Insurance Company ("FNTIC") to act as the closing agent, and on November 22, 2002, FNTIC sent a courier to the Plaintiff's home with the loan documents for them to sign.  Pl. Resp. SMF at ¶ 8.

As part of the November 2002 loan closing, Plaintiffs executed separate Security Deeds with respect to the loan and the equity line.  Def. SMF at ¶ 37.  Plaintiffs understood that they were getting a $240,000 fixed-rate loan and a $23,000 equity line.  Def. SMF at ¶ 38; see Pl. SMF at ¶ 9.  Plaintiffs acknowledged receipt of a Truth in Lending Disclosure Statement ("Disclosure Statement 2") that disclosed a Finance Charge of $275,171.69.  Def. SMF at ¶ 39.  Plaintiffs also acknowledged receipt of two copies of a Notice of Right to Cancel.  Def. SMF at ¶ 41; Pl. SMF at ¶ 10; see Stipulated Documents, Ex. 20.  As the refinancing satisfied Plaintiffs' obligation under the original loan, IndyMac canceled the original Security Deed.  Def. SMF at ¶ 47.

The Plaintiffs received a check for $2,168.10 at the November 2002 closing.  Def. SMF at ¶ 45.  In a letter to IndyMac dated December 4, 2002, Plaintiffs acknowledged that they "benefited from the loans."  Def. SMF at ¶ 48.  Plaintiffs

pursued refinancing because they wanted a loan with a fixed rate of interest instead of an adjustable rate that could go as high as 10.95 percent.  Def. SMF at ¶ 49.

Plaintiffs made regular payments on their mortgage from January of 2003 through December of 2004.  Pl. SMF at ¶ 14.  In January of 2005, Carol Mackey lost her job and Plaintiffs failed to make the monthly payment due on their loan.  Def. SMF at ¶ 52; Pl. SMF at ¶ 15.  Defendant contends that they failed to make the monthly payments due on the loan thereafter.  Def. SMF at ¶ 52.  Although Plaintiffs do not dispute that they failed to make their monthly payment in January of 2005, they dispute that they failed to make their subsequent payments and contend they merely "fell behind on their payments."  Plaintiffs' Response to Defendant IndyMac Bank's Statement of Material Facts ("Pl. Resp. SMF") at ¶ 52.

In any event, it is undisputed that, on or about March 18, 2005, IndyMac sent Plaintiffs a written notice of their default informing them that they had until April 19, 2005, to cure their default.  Def. SMF at ¶ 53.  In late March and early April of 2005, Plaintiffs discussed the possibility of a loan modification with Heather Harris in IndyMac's Loss Mitigation Department.  Def. SMF at ¶ 54.  Carol Mackey told Harris that she was unemployed but would be starting a new job in June.  Def. SMF at ¶ 55.  According to Plaintiffs, Harris reached an agreement with Carol Mackey that the

Plaintiffs would send monthly payments of $872.79 while she was seeking employment. Pl. SMF at ¶ 17. Defendant disputes that, however, and contends that Harris and Carol Mackey discussed only the possibility that Plaintiffs would make a half payment in June of 2005 and that they would go through "some type of modification" with the loan thereafter. Def. SMF at ¶ 56; Defendant's Response to Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Issue ("Def. Resp. SMF") at ¶ 17.

On June 5, 2005, Carol Mackey started a new job, but quit after one day. Def. SMF at ¶ 57; Pl. Resp. SMF at ¶ 57. On June 6, 2005, Carol Mackey filed bankruptcy. Def. SMF at ¶ 59. The bankruptcy case was dismissed on July 18, 2005. Def. SMF at ¶ 61. While the bankruptcy case was proceeding, Plaintiffs sent Harris a check for $872.79 on July 1, 2005, and also sent checks to IndyMac in that amount in August and September, 2005. Pl. SMF at ¶¶ 18, 19.

After IndyMac received notice that Carol Mackey's bankruptcy case was dismissed, it resumed its collection efforts by sending another notice of default to Plaintiffs, which was dated July 27, 2005. Def. SMF at ¶ 62. That second notice of default stated that Plaintiffs had until August 28, 2005, in which to cure their default. Def. SMF at ¶ 63. On August 30, 2005, Plaintiffs sent a letter to IndyMac stating that

they were rescinding the refinancing transaction that had closed in November of 2002. Def. SMF at ¶ 64; Pl. Resp. SMF at ¶ 64; Pl. SMF at ¶ 20; <u>see</u> Compl., Ex. B.  In that letter, Plaintiffs stated that they had never received a proper Notice of Rescission.  <u>See</u> Compl., Ex. B.  IndyMac did not respond to the Plaintiffs' letter within twenty days, as requested in the letter.  Pl. SMF at ¶ 21; <u>see</u> Compl., Ex. B.

Thereafter, IndyMac proceeded with foreclosure on the property pursuant to the Security Deed securing the refinancing loan of $240,000.  Def. SMF at ¶ 67. IndyMac provided Plaintiffs with written notice on September 6, 2005, and IndyMac advertised the property for sale on November 1, 2005.  Def. SMF at ¶¶ 68, 69.  The foreclosure sale occurred on November 1, 2005, and IndyMac was the high bidder. Def. SMF at ¶¶ 72, 73.  IndyMac subsequently deeded the property to the Federal National Mortgage Association.  Def. SMF at ¶ 74.

Plaintiffs filed the Complaint in this action on October 31, 2005, one day before the November 1, 2005 foreclosure sale.

## II.   **DISCUSSION**

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 175, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Bingham, Ltd. v. United States, 724 F.2d 921, 924 (11th Cir. 1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). The nonmoving party is

required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. See Anderson, 477 U.S. at 249; Ryder Int'l Corp. v. First American Nat'l Bank, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. Anderson, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. Id.

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. Id. An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Id. at 250. A dispute is genuine "if the evidence is such that

13

a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477

U.S. at 242.  Moreover, for factual issues to be genuine, they must have a real basis

in the record. <u>Matsushita</u>, 475 U.S. at 587.  The nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at

586. "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting

<u>First Nat'l Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S. Ct. 1575,

20 L.Ed.2d 569 (1968)).  Thus, the standard for summary judgment mirrors that for

a directed verdict: "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." <u>Anderson</u>, 477 U.S. at 259.

### B.    PLAINTIFFS' CLAIM OF RESCISSION

Plaintiffs' first cause of action asserted in the Complaint is for rescission under

TILA, pursuant to 15 U.S.C. § 1635.  Plaintiffs contend that they had a right under

TILA to rescind the November 2002 loan transaction and that they exercised that right

when they sent a letter to IndyMac on August 30, 2005, informing IndyMac that they

were rescinding the transaction.  According to Plaintiffs, IndyMac failed to accept

Plaintiffs' tender of rescission and failed to fulfill its obligations under TILA after

Plaintiffs rescinded the transaction.

TILA allows a consumer to rescind a consumer credit transaction under limited

circumstances.  15 U.S.C. § 1635(a) provides, in relevant part:

> (a)  Disclosure of obligor's right to rescind
>
> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction *until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later*, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (emphasis added).

TILA further provides that, even if the creditor fails to disclose all the

information and forms required, the debtor's right of rescission expires three years

after the transaction:

> An obligor's right of rescission expires three years after the date of
> consummation of the transaction or upon the sale of the property,
> whichever occurs first, notwithstanding the fact that the information and
> forms required under this section or any other disclosures required under
> this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f).

Plaintiffs argue that IndyMac failed to deliver the information and forms
required under 15 U.S.C. § 1635 and therefore, that they had three years until the
consummation of the transaction to rescind it.  It is undisputed that Plaintiffs closed
the loan transaction at issue on November 22, 2002.  Def. SMF at ¶ 36.  It is further
undisputed that on that day, the closing agent FNTIC sent a courier to the Plaintiff's
home with the loan documents for them to sign and that Plaintiffs executed the loan
documents at that time.  See Pl. Resp. SMF at ¶ 8.  While Plaintiffs were presented
with and, by their signatures and initials, acknowledged receipt of two properly
completed copies of a Notice of Right to Cancel at that time, only partially completed
copies of those forms were left with them.  See Def. SMF at ¶ 41; Pl. SMF at ¶ 10.
Because the forms left with them were not fully completed, Plaintiffs argue that the
three-day right of rescission provided for in 15 U.S.C. § 1635(c) is inapplicable and
that they had three years, or until November 22, 2005, in which to rescind the
transaction.  Finally, they allege that they rescinded the transaction in a timely manner

when they notified IndyMac on August 30, 2005, that they were exercising their right of rescission.

In response, Defendant IndyMac argues that Plaintiffs' loan transaction was exempt from rescission under TILA because it involved the refinancing of an existing loan secured by an interest in the same property as the existing loan. Although TILA does allow a debtor to seek rescission of a loan under certain circumstances, it specifically exempts certain transactions:

> This section does not apply to:
>
> (1)   a residential mortgage transaction as defined in section 1602(w) of this title;
>
> (2)  a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property . . . .

15 U.S.C. § 1635(e).

Defendant IndyMac argues that the July 2002 transaction is exempt from rescission because it is a "residential mortgage transaction" under 15 U.S.C. § 1635(e)(1), and further, that the November 2002 transaction is exempt from rescission because it is a "refinancing" of a previous loan, as that term is defined under 15 U.S.C. § 1635(e)(2). Plaintiffs argue, however, that the November 2002 loan

transaction does not qualify as a "refinancing" under 15 U.S.C. § 1635(e)(2) because

the first (fixed-rate) mortgage obtained was for less than the principal balance due on

the previous loan, and further, because Plaintiffs obtained a "new advance" under the

HELOC loan beyond the total amount owed in the previous loan.  Thus, because

neither the fixed-rate loan nor the HELOC loan was for exactly the amount due under

the previous loan, Plaintiffs argue that the November 2002 transaction can not be

considered a "refinancing" under 15 U.S.C. § 1635(e)(2) that would make it exempt

from rescission.

The Court rejects Plaintiffs' argument and finds that the November 2002

transaction was a "refinancing" as defined under 15 U.S.C. § 1635(e)(2), but only to

the extent that the November 2002 loans were used to pay off the principal balance

due under the previous loan executed in July of 2002.  The regulations promulgated

under TILA explain the right of rescission and identify the transactions that are

specifically exempt from rescission under TILA:

> (f) Exempt transactions.  The right to rescind does not apply to the following:
>
> > (1) A residential mortgage transaction.
> >
> > (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned

unpaid finance charge on the existing debt, and amounts attributed solely
to the costs of the refinancing or consolidation.

12 C.F.R. § 226.23(f).

Thus, under the terms of TILA as well as the regulations, the right of rescission

is not applicable to a transaction that constituted a refinancing of a previous debt, so

long as the second loan is limited to the amount due under the previous loan, plus the

additional costs of the refinancing transaction.  See In re Porter, 961 F.2d 1066, 1073-

74 (3d Cir. 1992) ("In short, a borrower may rescind the 'new money' portion of

certain 'refinancings,' but not the 'old money' portion.").  As the Third Circuit has

explained:

> The exemption has a rather simple rationale.  Although in general
> consumer borrowers need a "cooling off" period to reconsider
> encumbering the title to their homes, a borrower who refinances has
> already had that time to rethink with respect to the old money.  The
> borrower may want to reconsider further indebtedness, as that constitutes
> an additional risk of losing his or her home, but Congress evidently felt
> that it would be unfair to lenders if, simply by the expedient of seeking
> refinancing for the same amount, borrowers could gain the right to
> cancel the earlier loan.  In short, although the general requirement of
> notification and opportunity to rescind protects borrowers, the statutory
> exemption for "refinancings" avoids overprotecting them at the expense
> of lenders.

Porter, 961 F.2d at 1074 (footnotes omitted).

Plaintiffs argue that, because the fixed-rate mortgage executed in November 2002 was for <u>less</u> than the principal balance owed under the previous loan executed in July 2002, the fixed-rate mortgage can not be considered a "refinancing" under TILA.[1]  Even assuming that Plaintiffs borrowed less in November 2002 than the principal balance of the July 2002 loan, the Court finds Plaintiffs' argument that such a loan is not a "refinancing" to be squarely at odds with the regulations interpreting the statute.  Under 12 C.F.R. § 226.23(f), the right of rescission applies only "to the extent the new amount financed <u>exceeds</u> the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation."   12 C.F.R. § 226.23(f) (emphasis added).  Plaintiffs have cited no authority holding that this regulation is invalid or otherwise finding that a refinancing could be rescinded because it was for an amount <u>less</u> than the balance due on the original outstanding loan.  The Court finds the regulation, 12

---

[1]  Despite making this argument, Plaintiffs concede that the November 2002 transaction consisted of two separate loans that, together, were for more than the principal balance of the July 2002 loan.  TILA refers to exempt "transactions" rather than exempt "loans."   Accordingly, in evaluating whether the November 2002 transaction provided Plaintiffs with more or less than the principal balance of the July 2002 loan, the amount of both loans to Plaintiffs as part of the November 2002 transaction should be compared to the principal balance of the July 2002 loan.  When that proper comparison is made, the premise of Plaintiffs' argument, that the November 2002 transaction was for less than the principal balance of the July 2002 loan, falls, and with the loss of that premise, their argument fails.

C.F.R. § 226.23(f), to be a reasonable interpretation of the statute by the Board[2] charged by Congress with enforcement, and accordingly finds that, even if the fixed-rate mortgage loan made to Plaintiffs was the only element of the November 2002 transaction and was for less than the principal balance of the July 2002 loan, it was a "refinancing" under 15 U.S.C. § 1635(c)(2) which is exempt from rescission.

Accordingly, the Court rejects Plaintiffs' argument that they had the right to rescind the fixed-rate mortgage executed with IndyMac on November 22, 2002. To the contrary, the Court finds that the November 2002 transaction is exempt from rescission to the extent that the transaction (which included both the fixed-rate loan and the HELOC loan) covered "old money" that was already due to IndyMac under the previous loan executed in July of 2002.

It is undisputed, however, that Plaintiffs obtained additional funds from the November 2002 transaction that exceeded the principal due on the previous loan, plus the costs of the refinancing transaction. Defendant IndyMac does not dispute that the Plaintiffs received a check for $2,168.10 at the November 2002 closing and that amount represents an additional amount beyond what was owed on the previous loan,

---

[2]  The Board of Governors of the Federal Reserve System promulgates the regulations interpreting TILA.  15 U.S.C. § 1602(b).

plus transaction costs.  <u>See</u> Def. SMF at ¶ 45.  Thus, Defendant concedes that Plaintiffs retained the right of rescission on the November 2002 transaction for the additional $2,168.10 they borrowed from IndyMac.  Defendant argues, however, that Plaintiffs had only three days to invoke their right of rescission under 15 U.S.C. § 1635, and thus, their attempt to rescind the loan on August 30, 2005, was untimely.

In response to Defendant's argument that their notice of rescission was untimely, Plaintiffs argue that they had three years from the date of the transaction, not three days, in which to rescind the transaction.  According to Plaintiffs, they did not receive the proper disclosures required under 15 U.S.C. § 1635 regarding their right to cancel the loan and thus, they had a right to rescind the loan within three years of the transaction under 15 U.S.C. § 1635(f).

TILA requires the creditor to "clearly and conspicuously disclose" the borrower's rights of rescission and to provide the appropriate forms for the borrower to do so, in accordance with the regulations promulgated by the Federal Reserve Board.   15 U.S.C. § 1635(a).  The regulations further provide, in relevant part, as follows:

> (b)(1)  Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is

delivered by electronic communication as provided in § 226.36(b)).  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

(2)  Proper form of notice.  To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice.

12 C.F.R. § 226.23(b).

In the instant action, there is no dispute that IndyMac provided the Plaintiffs with two copies of forms that complied with substantially all of the requirements set forth above, with one significant exception.  Plaintiffs contend that the forms that IndyMac "provided" to them were deficient because the forms did not set forth the specific date that the rescission period expired.  Instead, Plaintiffs argue that the forms provided to them contained a box for the date of the three-day expiration period, but such box was left blank.  It is undisputed, however, that Plaintiffs also signed a form that did contain the appropriate disclosures, including the date the rescission period

expired, and that they both acknowledged with their signatures that they had been provided with two forms disclosing their right to cancel the transaction and the specific date such right expired.

TILA provides that the Plaintiffs' written acknowledgment that they received the appropriate forms and all disclosures constitutes a "rebuttable presumption of delivery."

> (c) Rebuttable presumption of delivery of required disclosures
>
> Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does not more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c).

Defendants have presented evidence that Plaintiffs signed a form acknowledging receipt of the appropriate disclosures and forms and Plaintiffs do not dispute that they did indeed sign those forms. <u>See</u> Stipulated Documents, Ex. 20; Carol Mackey Decl. at ¶¶ 5-8; Calvin Mackey Decl. at ¶¶ 5-8. Furthermore, Plaintiffs do not dispute that those forms contained all the necessary disclosures regarding their right to cancel, including the date of the expiration of the rescission period. <u>See</u>

Stipulated Documents, Ex. 20; Carol Mackey Decl. at ¶¶ 5-8; Calvin Mackey Decl.

at ¶¶ 5-8.  Plaintiffs contend, however, that after they signed the completed forms that

contained all the disclosures, IndyMac did not allow them to retain the completed

forms in their possession and thus only "delivered" to them the forms that left the date

of expiration blank.

According to Plaintiffs, when the courier from FNITC came to their home on

November 22, 2002, with the various loan documents for them to sign, he presented

each of them with three copies of the Notice of Right to Cancel (Refinancing with

Original Creditor) and three copies of the Notice of Right to Cancel (Open-End Credit

- For Each Transaction), but each of those copies was blank with respect to the date

on which the right of rescission expired.  <u>See</u> Calvin Mackey Decl. at ¶ 7, Ex. C, D,

E, F, G, H.  The Notice of Right to Cancel (Refinancing with Original Creditor) form

stated, in relevant part, as follows:

> Your Right to Cancel.  You are entering into a new transaction to
> increase the amount of credit previously provided to you.  Your home is
> the security for this new transaction.  You have a legal right under
> federal law to cancel this new transaction, without cost, within three (3)
> business days from whichever of the following events occurs last:
>
> (1)  the date of the transaction, which is <u>November 22, 2002;</u> or
>
> (2)  the date you received your Truth in Lending disclosures; or
>
> (3)  the date you received this Notice of Right to Cancel. . . .

> If you cancel by mail or telegram, you must send the notice no later than midnight of _____, (or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

Calvin Mackey Decl., Ex. C.  The copies of the Notice of Right to Cancel (Open-End Credit - For Each Transaction) also contained similar provisions, and also left the box blank regarding the date of the expiration of the rescission period.

In addition to the copies of the Notices of Right to Cancel forms that left the date blank, Plaintiffs concede that the courier also brought with him other copies of the Notices of Right to Cancel forms that had the date <u>November 26, 2002</u> handwritten in the box for the date that the rescission period expired.  <u>See</u> Calvin Mackey Decl. at ¶ 5, Ex. A.  Plaintiffs both wrote their initials beside the box containing the date of November 26, 2002, and signed these forms acknowledging receipt of the disclosures.

> Receipt of Notice.  I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.
>
> **Do not sign unless the dates in the boxes are completed.**

Calvin Mackey Decl., Ex. A (emphasis added); Carol Mackey Decl., Ex. A (emphasis added).

Plaintiffs contend that, although they signed the forms acknowledging that they had received two copies of the Notice of Right to Cancel (indeed, they contend they received three copies of each Notice), the courier took the completed signed copies with him when he left their home and left only the blank ones behind. Thus, Plaintiffs argue that the copies they actually "received" from IndyMac – *i.e.*, the copies that were actually left with the Plaintiffs at their residence – were the blank versions and not the fully completed signed versions. According to Plaintiffs, they asked the courier for copies of the signed versions, but he told them that they would have to get copies of the signed versions from IndyMac, and no such copies were ever provided to them until after they sent their letter to IndyMac in August of 2005.

Defendant argues that, despite Plaintiffs' contention that they did not "receive" adequate notice of their rights of rescission under TILA when the courier allegedly took the completed and signed forms with him, it is undisputed that they did receive adequate notice of their rights of rescission and acknowledged such notice by signing the forms that contained the correct date on which the rescission period expired. According to Defendant, under 15 U.S.C. § 1635(c), it has established a rebuttable

presumption of delivery and Plaintiffs have failed to present sufficient evidence to rebut that presumption.

The Court agrees with Defendant.  Plaintiffs do not dispute that they were given three copies of each of the Notice of Right to Cancel forms that contained the correct date and that they initialed the date and signed those forms.  Thus, there is no dispute that Plaintiffs were informed of their rights of rescission under TILA, including the date upon which that right of rescission expired.  Viewing all evidence and facts in the light most favorable to Plaintiff, and assuming that their version of events is true (as it must on a defendant's motion for summary judgment), the Court finds that, even if the courier did indeed take the signed versions of the forms with him when he left, Plaintiffs have failed to demonstrate a genuine issue of material fact as to whether Defendant violated TILA by failing to "clearly and conspicuously disclose" the borrower's rights of rescission.  To the contrary, there is no dispute that Defendant did "clearly and conspicuously disclose" the borrower's rights of rescission; the only question is whether the forms left with Plaintiffs must be duplicate originals containing the specific date on which the time period for rescission expired.

In sum, the Court finds that it is undisputed that Defendant IndyMac notified the Plaintiffs of their rights of rescission and notified them that they had three business

days from the date of the transaction (November 22, 2002) to exercise their rights of rescission. It is further undisputed that Defendant IndyMac also disclosed the specific date on which that right expired – November 26, 2002 – and that Plaintiffs even initialed the form beside that date, indicating that they had been informed of the date – but Plaintiffs contend that Defendant did not allow them to keep that original form in their possession and instead gave them three copies of the form that contained a blank box instead of that date. Plaintiffs do not argue that they were not made aware of the expiration date of their rescission right or that they were not given an opportunity to conform the copies of forms left with them so that they would be exact duplicates of the originals.

Under the totality of the circumstances of this case, the Court finds that Defendant IndyMac complied with the requirements of TILA by "clearly and conspicuously" disclosing the Plaintiffs' rights of rescission. As the Eleventh Circuit has stated, "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recission rights." <u>Veale v. Citibank</u>, F.S.B., 85 F.3d 577, 580 (11th Cir. 1996) (*citing* <u>Rodash v. AIB Mortgage Co.</u>, 16 F.3d 1142, 1146 (11th Cir.1994)). While IndyMac arguably should have provided the Plaintiffs with copies of the fully completed forms or required them to execute duplicate originals and retain one of the originals in their possession, TILA does not require complete perfection,

but adequate notice.  Plaintiffs concede that they acknowledged by their signatures that they had been presented with notice that they had only until November 26, 2002 to rescind the transaction.  They also acknowledge that they were left with forms that informed them that they had three business days from the date of the closing, November 22, 2002, in which to rescind the transaction.  The Court finds that, under the circumstances of this case, the forms left with Plaintiffs met the requirements of TILA.

Accordingly, the Court finds that Defendant IndyMac is entitled to summary judgment on Plaintiffs' claim of rescission under TILA and recommends that Defendant's motion be granted with respect to that claim, as asserted in the Plaintiffs' first cause of action.

### C.   PLAINTIFF'S OTHER FEDERAL CLAIMS

In addition to their claim of rescission under TILA, Plaintiffs have also asserted various other claims arising under TILA.  In general, claims brought pursuant to TILA must be brought within one year of the occurrence of the violation.  15 U.S.C. § 1640(e). Defendant IndyMac argues that Plaintiffs' remaining TILA claims are barred by the statute of limitations and Plaintiffs have failed to present any evidence or

argument that the statute of limitations does not apply to their claims.  Accordingly, the Court recommends that Plaintiffs' remaining TILA claims be dismissed.

Plaintiffs have also brought federal claims arising under Regulation Z, 12 C.F.R. §§ 226.1 et seq.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Although Plaintiffs allege in their Complaint that they have asserted claims under Regulation Z, that Regulation is not an independent federal statute but is instead a federal regulation created to implement the specific provisions of TILA.  See 12 C.F.R. § 226.1.  Moreover, Plaintiffs' claim under the FDCPA is apparently asserted only against Defendant Freedman.  See Compl. at ¶¶ 35-37 (alleging that Defendant Freedman and his Law Firm violated the FDCPA).  The Court notes that Defendant Freedman has never entered an appearance in this action and that Plaintiffs have failed to present proof of service of the summons and complaint upon Defendant Freedman.  Furthermore, Plaintiffs have failed to present any argument or evidence regarding their FDCPA claims, or Regulation Z, or any other claim arising under federal law, and the Court deems such claims abandoned. See Pl. Resp. Br. [51] at 15 (arguing that Plaintiffs are pursuing only their claims arising under TILA and state law).

Accordingly, the Court recommends that Plaintiffs' remaining federal claims, including but not limited to those claims arising under Regulation Z or the FDCPA, be dismissed.

D.     PLAINTIFF'S STATE LAW CLAIMS

Finally, Plaintiffs have also asserted a state law claim against IndyMac under the Georgia Fair Lending Act ("GFLA"), O.C.G.A. § 7-6A-1 et seq., and state law claims of fraud and usury arising out of the November 2002 transaction.  Plaintiffs brought this action in this Court alleging only federal question jurisdiction under 28 U.S.C. § 1331; they have alleged that this Court has jurisdiction over the state law claims only on the basis of supplemental jurisdiction under 28 U.S.C. § 1367.  Compl. at ¶ 5.

Because the Court has determined that Defendant IndyMac is entitled to summary judgment on Plaintiff's federal claims, this Court no longer has federal question jurisdiction and has only supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  The Supreme Court has explained that federal district courts should not entertain supplemental jurisdiction over state law claims as a matter of course:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction.").

In the instant action, the Court notes that Plaintiffs have asserted various claims against IndyMac under Georgia law.  The Court concludes that the resolution of these claims would require an examination of factual allegations that are not material to Plaintiffs' federal claims.  Thus, the Court finds that these claims would be better resolved in a state court that has a "surer-footed reading of applicable law."  Gibbs, 383 U.S. at 726.

Accordingly, the Court recommends that all of Plaintiffs' state law claims be dismissed without prejudice.

E.      DEFENDANT'S COUNTERCLAIM

Defendant IndyMac has asserted a counterclaim against Plaintiffs for payment of the home equity line of credit ("HELOC") loan opened by Plaintiffs on or about November 22, 2002, including the entire balance of principal and interest, together with attorney's fees in the amount of fifteen percent of the principal and interest due. Neither party has moved for summary judgment on the counterclaim, and neither party has asserted that this Court has any ground for jurisdiction over the counterclaim except supplemental jurisdiction. For the reasons set forth above in connection with Plaintiffs' state law claims, the Court recommends that Defendant's counterclaim also be dismissed without prejudice.

## III.   **RECOMMENDATION**

For all the above reasons, **IT IS RECOMMENDED** that Defendant IndyMac Bank, F.S.B.'s Motion for Summary Judgment [45] be **GRANTED**, that Plaintiffs' Motion for Summary Judgment [46] be **DENIED**, that judgment be entered in favor of Defendant IndyMac on Plaintiff's TILA claims, and that all other claims asserted in the Complaint be dismissed. **IT IS FURTHER RECOMMENDED** that Defendant IndyMac's counterclaim against Plaintiffs also be dismissed.

As this is a **Final Report and Recommendation**, there is nothing further in this action pending before the undersigned.  Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

IT IS SO RECOMMENDED this 6th day of August, 2007.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE